THE CANTERBURY AQUEDUCT COMPANY *vs.* ENSWORTH.

A party who seeks, by the aid of a court of equity, to enforce the specific performance of a contract, must show, that the relief asked for is strictly equitable, or the court will not interfere.

The Canterbury Aqueduct Company, and E, the defendant, entered into the following contract, *viz.*, " Said company propose to buy of E, the privilege of digging a fountain upon his land, at a suitable place north-west of J's house," &c.,—" said company to pay therefor, twenty dollars, and a lease, for the purpose of securing the privilege, to be given by said E." At the time of the negotiating and executing of such contract, both parties supposed, that said fountain was to be located upon land owned in fee, by E alone. But the plaintiffs, without consulting E, erected the same upon other land, which was owned by E jointly with his wife. E denied the plaintiffs' right to erect said fountain, at said place, and claimed, that they were confined, by the contract, to land owned solely by him. On a bill in equity, to compel E, to execute a lease of the right claimed by the plaintiffs, at the place of such location, it was held, 1. That, to grant the decree prayed for would operate as a surprise upon the defendant; 2. That the plaintiffs had gained nothing, by erecting their fountain at said place, contrary to the express prohibition of the defendant,—that the latter had lost no right, by laches ; and consequently, the prayer of such bill ought not to be granted.

THIS was a bill in equity, brought to the superior court for Windham county. At the term of said court, holden in October, 1852, the cause was referred to a committee, who reported substantially the following facts, *viz.* :

The plaintiffs are a corporation, constituted for the purpose of conducting water into the village of Canterbury.

At the time said corporation was organized, the defendant was, and for many years before, had been, in the possession and improvement of a tract of land, lying in the town of Canterbury, near said village. Said land, with other land adjoining, was formerly the property of Thomas Buswell, who died about the year 1808, leaving a widow, Thankful, two sons, Jabez and Charles, and a daughter Polly, who afterwards became the wife of said Ensworth. The estate of said Thomas was duly settled, and

distributed between said widow and children, in the year 1808, in such manner, that the part of said tract next northerly of the southerly line thereof, and nearest said village, was set to said Charles, and another part next northerly of, and adjoining the part so set to Charles, and containing thirty-six acres, was distributed to said widow, as a part of her dower. Said dower land was not distributed, until the year 1850, subsequently to the location and construction of said fountain thereon, and to the bringing of the plaintiffs' bill. There was never any fence between said widow's land, and the land distributed to said Charles, and they were occupied together.

In the year 182–, the defendant purchased the lot distributed to said Charles, and, on the 25th day of March, 1822, bought, and took a release deed from said Jabez, of all his right and title in the dower land, and, on the seventh day of June, 1828, bought and took a release deed from said Charles, of all his interest in said dower land, the interest of each therein being an undivided third part thereof, in fee, subject to said widow's dower, which said Nehemiah had previously purchased. For more than twenty years, prior to the date of said bill, the defendant was the sole occupant of the tract set to said Charles, and to said widow, and the sole ownership thereof, saving the right of his wife, as the owner of an undivided third in said dower land, as an heir of said Thomas, vested in him. Said widow died, about twelve years since. For more than twenty years, before said bill was brought, the defendant occupied the whole of said premises, and set the same in the tax list, in his own name.

About the first of August, 1843, the plaintiffs and said Nehemiah entered into the following agreement, *viz.*:

"The Canterbury Aqueduct Company propose to buy, of Nehemiah Ensworth, the privilege of digging a fountain *upon his land,* at a suitable place north-west from A. T. Judson's house, and of such dimensions and depth as said

company may deem serviceable; stone up the same with stones to be gathered from the adjacent grounds; and, from said fountain, dig trenches, to lay pipes, and conduct the water therefrom, to the valley of Canterbury,—and always to enter the lands, and keep the fountain and aqueduct in repair, keeping the same covered up, at all times, and doing as little damage to growing crops as may be. Said company to pay therefor $20.00; and a lease, for the purpose of securing the privilege, to be given by said Ensworth.

NEHEMIAH ENSWORTH."

The lease mentioned in said document, it was intended and understood by said parties, should be a continuing lease, and grant of said privileges to said company, so long as they should have occasion to exercise and enjoy the same.

During all the time of the negotiation between said parties, until after the signing and delivery of said document, both of said parties supposed that the location of such well and trenches, would be on land set to said Charles, by the aforesaid distribution. No mention was made of the place where such location was finally made, nor was the adaptation of the same, to their purpose, known to said company; and, in their negotiations, said land, east of said road, was always pointed out by them, to the defendant, as the land where they supposed the water could be got most advantageously for their purposes, and where they expected their location would be; but no particular spot was agreed upon between the parties for such location; said company always intending to leave this to the person employed by them, to construct their works, as more competent than themselves, to determine it.

Previous to the execution of said document, a competent person visited said land, east of the road, and suggested points upon it, as most likely to prove suitable for said company's ends, but neither he, nor any of said company, prior to the execution of said writing, and the making of said agreement, had visited, or thought of, the lot where said lo-

cation was actually made, which was separated from the other, by fences and an old road, and the point of location in it was at some distance from the points originally suggested for that purpose.

In August, 1843, said fountain was located west of said road, on the land set to said widow. The plaintiffs were then, and at all times, willing and ready to pay said stipulated price of twenty dollars, to the defendant, whenever thereto requested. Supposing the defendant to be the sole owner of said land, the plaintiffs made a suitable excavation for their fountain, secured the same with a sufficient wall and covering, and dug therefrom a trench suitable for pipes to conduct the water therefrom. Soon after said work was done, the plaintiffs tendered twenty dollars to the defendant, and have continued ready to pay him said sum, but he, at all times, has refused to take the same, and to execute a lease or conveyance to them. Neither the defendant, nor his wife, was consulted as to such final location, and on finding the plaintiffs constructing said fountain, he ordered them to desist, and quit said lot, denying their right to construct their works there, and claiming, that they must confine themselves to said land, east of the road, as the place agreed upon ; but nothing was said as to the nature of his title in said land. At this time, said company had dug their fountain, but had not stoned the same, or laid their pipes, or dug their trench, to any great distance, if at all. But the plaintiffs, claiming the right, by virtue of said agreement, prosecuted and finished their work, at said place, occasioning thereby no damage to the defendant. The plaintiffs, with the knowledge of the defendant, and his wife, used water drawn therefrom by means thereof, without interruption, until the month of August, 1849, when, it having become necessary that said fountain should be uncovered, for the purpose of cleaning it out, and making some necessary repairs thereon, said Nehemiah interrupted their use of the

water, and again refused to execute a lease, or other instrument, granting to the plaintiffs the right to use said premises, as claimed by them.

In the year 1851, while the plaintiffs' bill was pending, the defendant procured a distribution of the real estate, assigned as dower to the said Thankful, by which that portion thereof, upon which said fountain was located, was set to the wife of the defendant.

The question, as to what decree should be passed in the case, was reserved for the advice of this court.

*Cleveland* and *J. A. Hovey*, for the plaintiffs, contended, 1. That the plaintiffs are entitled to a decree against the defendant, requiring him to execute his contract specifically, so far at least, as he has the power to do it. It is sufficiently certain, in its terms, to be clearly understood. The fountain, of which the plaintiffs ask for a lease, is located in a place authorized by the contract. The works constructed by the plaintiffs, have not done, and can not do, any injury to the defendant, or occasion him any substantial inconvenience or damage; nor can they impair the use of the land, for the purposes of the defendant.

2. The fact, that Mrs. Ensworth is the owner of the fee of the land, does not release the defendant from the obligation to perform his contract specifically, to the extent of his power. For, notwithstanding the distribution of 1850, he has an estate for life, in the land, as tenant by the curtesy, and may therefore, be compelled to execute to the plaintiffs, a lease of the privileges specified in his agreement, for the time that his tenancy is to continue. *Waters* v. *Travis*, 9 Johns. R., 450. *Annan* v. *Merritt*, 13 Conn. R., 489. *Hepburn* v. *Auld*, 5 Cranch, 262. *Jacobs* v. *Lock*, 2 Ired. Ch., 286. *Henry* v. *Liles*, 2 Ired. Ch., 407. *Weatherford* v. *James*, 2 Ala. R., 170. *Bass* v. *Gilliland*, 5 Ala. R., 761. *James* v. *Shackleford*, 2 Bibb., 410. 6 Metcalf, 346.

*Foster* and *Welch*, for the defendant, contended, 1. That the contract was understood, on both sides, to apply to lands, lying east of the highway ; that was considered eligible for the purpose, and no other was contemplated, and, to compel the defendant to execute a lease of the land now claimed, for the purposes of the company, would be, to make a new contract for the parties, and to compel Ensworth to lease perpetually, land in which he has only a life estate.    It would also create an incumbrance on, and reduce the value of, the land of Mrs. Ensworth, who never consented to, or was consulted in regard to, the contract.

2. To grant such a decree, as the plaintiffs ask for, would be virtually to attack and set aside a valid order and decree of the court of probate.

3. If there is a misunderstanding between the parties, as to the identity of the tract to be conveyed, a court of equity will not decree a specific performance.    The plaintiffs gained nothing by proceeding to expend their money on this work, under the eye of the defendant.    They were forbidden to proceed, as soon as it was known they had commenced work, and before they had invested a dollar.

HINMAN, J.    Where the specific execution of a contract is sought to be enforced, the plaintiff must show, that the relief asked for, is strictly equitable, in reference to the parties, and the subject matter of the contract, or the court will not interfere.    This principle is so obviously just as to need no authority to support it.    A different rule would, to a great extent, destroy the equitable character of the court, and, not unfrequently, convert it into an instrument for the enforcement of unconscientious contracts, rather than a tribunal where such contracts may be set aside.    Upon this principle, the court refuses to compel the execution of contracts, founded upon fraud, imposition, or mistake ; and, where such execution will operate as a surprise upon the party

against whom it is sought to be enforced, courts will generally leave the parties as they find them, liable only to such redress as can be obtained at law : as a court of equity often relieves parties from the execution of contracts, which operate as a surprise upon them, so, to be consistent, it must refuse to execute such contracts, when their specific execution is asked for.

Upon these plain and obvious principles, without going at all into the examination of cases, on this subject, we are satisfied, that this bill must be dismissed. It is true, that the written memorandum of the contract sought to be enforced, in a rather enlarged sense of the words used in it, might entitle the plaintiffs to the right of maintaining their fountain, at the place where it was first located. The writing states, that the plaintiffs proposed to buy of the defendant, the privilege of digging a fountain upon *his land,* at a suitable place north-west from Judge Judson's house, in the village of Canterbury : and to dig trenches and lay pipes, and conduct the water therefrom, to said village. The expression, *his land,* is, no doubt, broad enough to include any land of his, north-west of the village ; and, as he owned, in his own right, an undivided portion of the land where the plaintiffs erected their works, and also had a life estate in the other portion, which belonged to his wife, it might properly enough all be said to be *his land;* and, had this been the only land of his, which would answer the description, the conclusion must have been, that it was this land which was intended.

But, the report of the committee, as we understand it, shows, that it was not the expectation of either party, that the fountain should be established on the land which he only owned, in the qualified sense alluded to. It appears, in the first place, that he had a large quantity of other land, adjoining this, (which belonged to him and his wife,) which was owned by him alone, and which, therefore, answers the description in the writing, perfectly. Now, when we consider,

that he was to give to the plaintiffs, a perpetual right of this water right in his land, and that it was the object of the plaintiffs, to procure a perpetual right, the inference is very strong, that, by the expression, *his land*, the parties must have intended the land of which he was the absolute owner, and in which alone he had the power to grant such a perpetual right as was intended. The situation of the defendant, in reference to the title to his land, goes very far to sustain the finding of the committee, as we understand the report, that the understanding of the parties was, that the fountain should be established on land to which the defendant had a clear title, in fee. The report says : "That, during all the time of the negotiation respecting the contract, until after the signing and delivery of it, the parties both supposed that the location of said well and trenches, would be on land so set to said Charles,"—which was the land exclusively owned by the defendant,—and "that no mention was made of the place where said location was finally made, nor was the adaptation of the latter place to the purposes of the plaintiffs, known to them ; and, in the negotiation with the defendant, the land set to Charles, and which was east of an old highway, was always pointed out, by the plaintiffs, as the land where they supposed the water could be most advantageously obtained for their purposes, and where the expected location would be." The report further finds, that the person employed by the plaintiffs, to construct their works, and who was the person to whom they intended to leave the location of them, had visited the land, to which the defendant had a perfect title, previous to the execution of the written contract, and had suggested points, upon that land, as most likely to prove suitable, for the plaintiffs' purposes ; and neither he, nor any member of the company, had visited, or thought of, the lot where the location was made, which was separated from the other by fences and an old road. It is clear, from this finding, that it was the

expectation of these parties, that the fountain was to be located east of this old highway ; and, if it be admitted, that the written contract is so drawn up, that, in an enlarged sense of the language used, it may be said to include the land on both sides of the way, it is still apparent, that, to give it that construction, would operate as a surprise upon the defendant. Indeed, to compel the defendant to give the plaintiffs a perpetual lease of a right to erect and maintain their works on the west side of the road, rather seems to us, as the making of a new contract between the parties, than merely compelling the execution of one already made. We think the defendant may well say, that, had he understood the contract to authorize the company, in going west of the road, he would have refused to make it ; especially, when it is considered, that his title to the land there, did not enable him to grant the full right which the plaintiffs expected to receive. If this bill had been brought, before the plaintiffs had expended money in the erection of their works, we think no one would question the correctness of this conclusion ; and, on the other hand, it is doubtless true, that the terms of the written memorandum are so indefinite, that, had the plaintiffs located and erected their works, at the place claimed by them, with full knowledge on the part of the defendant, and without objection on his part, it would now be too late for him to object to the location. But, no such fact appears in the case. On the contrary, the defendant was not consulted in regard to the location, and, as soon as he was informed of it, he denied the plaintiffs' right to construct their works, at that place, and ordered them to desist and quit that lot. He, at the same time, claimed, that they were confined to the land on the opposite side of the highway ; and he has been consistent in this claim, up to the present time, always refusing to take the stipulated compensation, on the ground that the works were erected at a place never contemplated or authorized by him. He has,

therefore, lost nothing by laches, and the plaintiffs have gained nothing, by going on and expending money in the erection of works, contrary to his express direction. Under these circumstances, however true it may be, that the injury to the defendant, by the continuance of the fountain at the place where it was located, will be less, than will be the plaintiffs' injury, by its removal, or that one object of the defendant is to compel the plaintiffs to pay an unreasonable compensation, for the privilege of continuing it there; still, we can not say, that he ever made, understandingly, the contract claimed, and we can not therefore enforce its execution. We advise that the plaintiffs' bill be dismissed.

In this opinion, the other judges concurred.

Bill to be dismissed.