## PICKERING v. PICKERING.

Applications to a court of equity, to decree the specific performance of contracts, are addressed to its sound and reasonable discretion, and relief is to be granted or refused according to the circumstances of each particular case. The granting of such relief must appear to be entirely equitable.

It is not the province of a court of equity to enforce stale demands.

If the plaintiff has been guilty of gross laches, or applies for relief after a long lapse of time unexplained by equitable circumstances, or has apparently held back from an assertion of his rights for a long period with a view to speculate on the possibility of such changes by the lapse of time as might determine it to be for his interest to have the contract executed, specific performance will not be decreed.

Where the specific performance of a contract to convey a reversionary interest in land, was sought after the lapse of nearly ten years, and after the reversion of dower, as it existed at the date of the contract, had

been converted by the untimely death of the widow into a present estate in fee, and there was no satisfactory explanation of the causes of the delay, relief was refused, and the bill dismissed.

Where no time of payment is specified in a contract for the conveyance of real estate, the purchase is to be completed in a reasonable time; and what is a reasonable time is to be determined by all the circumstances of the transaction. If the estate contracted to be conveyed be of greater or less value according to the effluxion of time, it is manifest that time is of the essence of the contract; and any stipulation as to time in such contract, whether expressed or implied, must be literally complied with in equity as well as in law.

IN EQUITY. On the 15th day of February, 1858, the plaintiff filed in this court his bill, asking for the specific performance of the defendant's contract, entered into on the 10th day of February, 1848, whereby he agreed to convey to the plaintiff his reversionary interest in his mother's dower in his late father's homestead, situate in Newington, in this county, upon the plaintiff's paying him therefor the sum at which the same should be appraised by three referees named in the contract. The referees appraised the defendant's interest in the reversion at $144, and made their award on the 8th day of April, 1848. At the same time, upon other controversies between the parties submitted to them, the referees awarded that the plaintiff should recover of the defendant the sum of $46.50. At the date of the contract, in relation to the conveyance of the defendant's reversionary interest in his mother's dower, his mother was sixty-two years of age, and in good health; but she died suddenly, in August, 1856. On the 18th day of January, 1858, the plaintiff tendered to the defendant the sum of $228.50, being the amount of the sum at which the referees had appraised the defendant's reversionary interest in his mother's dower, and interest thereon from the date of their award, and demanded of the defendant to execute to himself a quit-claim deed of his reversionary interest in his mother's dower in his father's homestead, as the same existed on

the 10th day of February, 1848, which the plaintiff had caused to be prepared for the purpose. The defendant declining to execute this deed, the plaintiff filed his bill, and deposited the money tendered with the clerk of this court.

The other material facts in the case, as shown by the bill, answer, and proofs, sufficiently appear in the opinion of the court.

*William H. Rollins* and *J. W. Emery*, for the plaintiff.

*S. H. Goodall*, for the defendant.

FOWLER, J.    The plaintiff seeks to enforce the specific performance of the defendant's contract to convey a reversionary interest in land, after the lapse of nearly ten years, and after the reversion of dower, as it existed at the date of the contract, has been converted, by the death of the widow, into a present estate in fee.    Aware of the well established rule of equity, that if a plaintiff has been guilty of gross laches, or if he applies for relief after a long lapse of time, unexplained by equitable circumstances, his bill must be dismissed, since courts of equity do not, any more than courts of law, administer relief to the gross negligence of suitors, the plaintiff alleges that he has been in no default in not having performed his part of the agreement; that, immediately after the award, he tendered payment of its amount to the defendant, and that he has ever since been, and shown himself ready, desirous, and eager to perform the contract.    1 Fonblanque's Eq., B. 1, ch. 6, sec. 2, and notes; *Colson* v. *Thompson*, 2 Wheat. 336, 341; *Kendall* v. *Almy*, 2 Sumner 278; 2 Story's Eq., secs. 771, 776, and authorities cited.

On the contrary, the defendant insists that, by the mutual assent of the parties thereto, the contract was virtually abandoned from the date of the award.    He also

states positively that he has no knowledge, information or belief that the plaintiff, previous to the tender on the 18th day of January, 1858, ever offered or desired to secure the performance of the contract, by tendering payment of the amount of the appraised value of the reversionary interest in the land.

What is the evidence upon this latter point? James W. Emery, Esq., testifies that it was agreed between himself, as attorney for the plaintiff, and Albert R. Hatch, Esq., as attorney for the defendant, acting for their respective clients, at the time of the hearing before the referees, that the chairman of the board should prepare a deed of the reversion to be executed by the defendant, and that such deed was thus prepared, and subsequently passed by him to Mr. Hatch; that upon the 14th day of April, 1848, the plaintiff placed in witness' hands the sum of $98, which, with the sum reported by the referees as due from the defendant to the plaintiff on other matters, made an amount greater than the appraised value of the defendant's share of the reversion, with instructions to adjust the whole matter with the defendant; and that when he handed Mr. Hatch the deed prepared by the chairman of the referees, he informed him that he had money in his hands, and should be ready to adjust the matter whenever the defendant should execute the deed. There is no particle of evidence from any source that the defendant had any knowledge of this arrangement between the counsel originally, or that he ever assented to it afterwards, or that either he or his attorney ever agreed to receive the award of damages made by the referees in favor of the plaintiff, in part payment for the appraised value of his interest in the reversion. Moreover, there is evidence from Mr. Emery himself, if the statements made to him by Mr. Hatch are competent, from which it may fairly be inferred that the defendant either refused to accede to such a proposition, or relied upon some agreement of the

plaintiff to exonerate him from the obligation to convey, since Mr. Emery distinctly remembers that Mr. Hatch told him the defendant unqualifiedly refused to execute the deed. This was previous to the fall of 1848; for Mr. Emery says he notified the plaintiff, in the fall of that year, that he could get nothing done, and the plaintiff had better take back the ninety-eight dollars, which he did on the 5th of December, 1848.

To say nothing of the entire absence of any testimony from Mr. Hatch on this subject, although he is a witness in the case, or of the controlling circumstance, under the well established rules of equity, that but a single witness is called to overthrow the positive and explicit statements of the defendant's answer responsive to the allegations of the bill, we are unable to discover anything in the testimony of Mr. Emery tending to show that the plaintiff ever paid, or offered to pay, or made arrangements to pay, to the defendant the amount of the appraised value of the reversion, as estimated by the referees, so as to be entitled to a deed thereof, in accordance with the express provisions of the defendant's contract; and there is no pretence that either the defendant, or his attorney for him, ever agreed to waive the performance in full by the plaintiff of his part of the contract. Mr. Emery only says that it was arranged between himself and Mr. Hatch that the chairman of the referees should draw the deed, and it was drawn accordingly, but he does not say that either the defendant or Mr. Hatch agreed that the sum awarded by the arbitrators against the defendant should be allowed in part payment of the appraised value of the reversion, as estimated by them; and from what Mr. Emery states of the subsequent litigation between the parties, it would seem there might have been good reasons why no such agreement should be made.

On the 5th of December, 1848, the plaintiff took back from Mr. Emery the ninety-eight dollars which he had

placed in his hands on the 12th of April previous, for the purpose of enabling him, with the aid of the award of $46.50, to adjust the appraised value of the defendant's reversion; having been notified by Mr. Emery in the preceding autumn that nothing could be done, because the defendant utterly refused to execute any deed. What evidence has the plaintiff offered to show any diligence, or the slightest effort even, on his part, to secure the performance of the defendant's contract, by payment or tender of the appraised value, since that time up to the 18th day of January, 1858 ? Not a particle ; and it would look as though the plaintiff had thereupon concluded not to insist upon its fulfillment. Mr. Emery does, indeed, state that the plaintiff consulted him several times in relation to bringing a suit to compel the performance of the defendant's contract, but he omits to say whether these consultations were before or after the return to the plaintiff of the ninety-eight dollars, or before or after the assignment to the defendant of a portion of his father's homestead in severalty; which, the defendant avers, was a contingency, on the happening of which, by the agreement of the plaintiff, the defendant's contract to convey the reversion was to be virtually annulled or rescinded. He only says that at the period of those consultations there were two suits pending in favor of the defendant against the plaintiff, and he advised the plaintiff not to institute another until those should be terminated.

If we are correct, then, in our view of the testimony including the defendant's answer, the plaintiff comes into a court of equity, after the lapse of nearly ten years, to enforce the specific performance of a contract to convey to him a reversion of dower, which he has permitted to slumber in quiet repose during that entire period, without any offer or effectual manifestation of disposition on his own part to comply with its provisions, and after the reversion has become a present estate in fee by the prema-

ture death of the widow to whom the dower had been assigned. Is he, under these circumstances, entitled to the relief sought? It seems to us clearly not, on well established and familiar principles.

Time is not generally deemed in equity to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract. 2 Story's Eq., sec. 776, and authorities. But courts of equity do have regard to time, so far as it respects the good faith and diligence of the parties. If circumstances of a reasonable nature have disabled the party from a strict compliance, or if he comes, *recenti facto*, to ask for a specific performance, his suit is treated with indulgence, and generally with favor. But in such cases even, it should be clear that the remedies are mutual; that there has been no change of circumstances affecting the character or justice of the contract; that compensation for the delay can be fully and beneficially given; that he who asks a specific performance is in a condition to perform his own part of the contract, and that he has shown himself ready, desirous, prompt, and eager to perform it. 2 Story's Eq., sec. 776.

The real contract, and all the stipulations intended to be complied with literally, must be carried into effect. If, therefore, the thing contracted to be sold be of greater or less value according to the effluxion of time, it is manifest that time is of the essence of the contract, and a stipulation as to time, whether expressed or implied, must be literally complied with in equity as well as law. The cases of the sale of stock, and of a reversion, are instances of this. *Kipwell* v. *Knight*, 1 Younge & Collyer 415.

In equity, lapse of time creates a presumption that the parties have waived or settled their rights, and stale claims, when brought into a court of equity, are received without favor, and entitled to little consideration, unless attended with circumstances that repel such presumption.

Pickering *v.* Pickering.

A party entitled to the specific performance of an agreement to convey property, real or personal, will not be permitted to hold back from an assertion of his rights, and speculate on the possibility of such changes as may decide whether it would be for his interest to have the conveyance made; but he is required to be vigilant and prompt in the assertion of those rights; and if changes have occurred during the lapse of time in the value of the property to be conveyed, or of the consideration to be paid, a court of equity will always refuse its aid, and leave the party to seek redress at law. *De Cordova* v. *Smith*, 9 Texas 129.

It is not the province of a court of equity to enforce stale demands, nor will the specific performance of a contract be enforced, unless the party seeking it shows that he has acted in perfect good faith. *Smith* v. *Hampton*, 13 Texas 459; *Conrad* v. *Lindley*, 2 Cal. 173; *Powers* v. *Hale*, 25 N. H. (5 Foster) 145.

The jurisdiction of a court of equity to decree the specific performance of contracts, is not a matter of right in the parties, and to be demanded *ex debito justitiæ;* but applications, invoking this power of the court, are addressed to its sound and reasonable discretion, and to be granted or refused according to the circumstances of each case. *Duvall* v. *Myers*, 2 Maryl. Ch. Dec. 401; *Waters* v. *Howard*, 1 Maryl. Ch. Dec. 112; *Hester* v. *Hooker*, 7 S. & M. 768; *Tobey* v. *County of Bristol*, 3 Story 800; *Clement* v. *Reed*, 9 S. & M. 535; *White* v. *Damon*, 7 Vesey, Jr. 35; *Fain* v. *Brown*, 2 Vesey, Jr. 307; *Seymour* v. *Delancy*, 6 Johns. Ch. 222; *Powers* v. *Hale*, 25 N. H. (5 Fost.) 145.

Relief by specific performance is matter not of absolute right in the party, but of sound, reasonable discretion in the court, and the granting of such relief must always appear to be entirely equitable. The court will never compel specific performance, where, looking at all the

circumstances on both sides, it is apparent that injustice would or might probably be done thereby. *Clarke* v. *Rochester, Lockport & Niagara Falls Railroad*, 18 Barb. 350; *Canterbury Aqueduct Co.* v. *Ensworth*, 22 Conn. 608; *Wadsworth* v. *Manning*, 4 Md. 59; *Blackwelder* v. *Loveless*, 21 Ala. 371; *Waters* v. *Howard*, 8 Gill 262; *Carey* v. *Holmes*, 10 Ala. 776.

If no time of payment be specified in the contract for the conveyance of property, the purchase is to be completed in a reasonable time. What is a reasonable time is to be determined by all the circumstances of the transaction.

Applying these principles to the facts not controverted in the present case, it seems to us quite clear that the plaintiff is not entitled to a decree for specific performance. Conceding that he intended and desired to secure the performance of his contract by the defendant, when, on the 12th of April, 1848, he left the ninety-eight dollars in the hands of Mr. Emery, there is no jot or tittle of evidence, from any source, that the plaintiff ever afterwards, for nearly ten years, made the slightest efforts in that direction, except to consult with Mr. Emery at some time in relation to the propriety of bringing a suit. His claim is, then, in the strongest sense of the word, a stale one, and to be received without favor, unattended, as it seems to us to be, by any equitable circumstances calculated to repel the presumption, arising from long lapse of time, that, after receiving back the ninety-eight dollars on the 5th of December, 1848, he abandoned the design of enforcing the contract for conveyance. If he ever afterwards intended to enforce it, he has been guilty of gross laches in asserting his rights. Besides, the long delay, protracted until after the death of the widow, would seem to indicate that the plaintiff may not have acted in perfect good faith; may designedly have held back from asserting his right to a specific performance, with a view to

speculate on the possibility of her death in such period as might make it for his interest to have the conveyance made. If, at the date of the submission and award, the arbitrators, as they probably did, estimated the value of the defendant's interest in the reversion of the widow's dower, by deducting from the estimated value of the whole estate assigned as dower, the value of the dower therein as shown by the tables of mortality in use for that purpose in this State, taking the age of the widow at that time to have been, as agreed by the parties, sixty-two years, it is apparent that the value of the defendant's reversion, as thus estimated, was more than doubled by the sudden and untimely death of the widow in August, 1856, at the end of little more than eight years from the date of the award, instead of her surviving for a period of fourteen and a quarter years, as the tables of mortality show her expectation of life at the time of the award to have been. If, as his conduct seems most naturally and very strongly to suggest, the plaintiff awaited the result of the widow's death before deciding to insist upon the performance of the defendant's contract to convey, it would be most unjust and inequitable to permit him to avail himself of an election, not made until after the value of the property contracted to be conveyed had more than doubled and the property itself been converted from an uncertain contingent interest, dependent on the life of another, into a present estate in fee. We do not intend to suggest that this must have been the motive of the plaintiff's delay. He was bound to show affirmatively that he had not acted from such motive, and has failed to do so.

Moreover, we think that, under all the circumstances of this contract, time was a matter essential in its performance. There being no express stipulation of any period within which the plaintiff was to make to the defendant payment of the estimated value of the reversion, and thus

entitle himself to a conveyance, he was impliedly bound to make it within a reasonable time. The value of the reversion depended upon the effluxion of time; and we think a payment made or tendered after the lapse of ten years, and after the reversion had become a present estate in fee by the untimely death of the widow upon whose life it depended, cannot be considered as having been made within a reasonable time. The plaintiff, therefore, having failed to show any payment made or tendered, or any disposition evinced towards making or tendering such payment, after the first few weeks or months from the date of the award, until long after the death of the widow, has failed to bring himself within the rule entitling him to a decree of specific performance, by failing to show any offer or readiness to perform on his own part, within the clearly implied requirements of the contract as to time.

Upon the whole, then, without adverting to various other considerations which might be adduced in support of the conclusion at which we have felt compelled to arrive, we are clearly of opinion that the plaintiff has failed to make out a case entitling himself to an exertion of the extraordinary power of this court to compel the specific performance by the defendant of his contract to convey; and the bill must be dismissed with costs to the defendant.

*Bill dismissed with costs.*