## George Wadsworth *vs.* Samuel Manning, James H. Stimpson, Alex. S. McTavish, and Josias Pennington, Trustee of Emily McTavish.

The appellant being the owner of a zinc mine, entered into a written agreement with the appellees, by which he agreed to furnish 2000 tons of ore

per annum, for three years, on being paid $10 per ton therefor, and they, to provide suitable buildings and machinery for its conversion into paints, &c., and to divide with him the profits in the proportion of one-fourth to themselves, and the remainder to him : the costs of the buildings and machinery to be paid out of the profits after a specified time.  HELD :

That this agreement constituted a partnership between the parties ; and if a proper case were presented a specified performance of it would be decreed.

The appellant under this agreement furnished 746 tons of ore, receiving therefor $5860, leaving $1600 still due, when the appellees refused to receive any more, or to appropriate the buildings to the purpose of its manufacture, upon the ground that the business could only be followed by the ruin of all parties concerned.  The time specified for which the appellant was to furnish the ore had expired, the business was proved to be hazardous and uncertain, and the buildings and machinery entirely unfit for its manufacture.  HELD :

That in such a case equity ought not to decree a specific performance, if the appellant has full and adequate remedy at law ; and it is clear, that his redress is ample and complete at law.

A decree for specific performance is not *ex debito justitiæ*, but rests in the sound discretion of the court, to be given or refused as the particular circumstances of each case may demand.

Though one partner cannot sue another at law, in an action of account, unless there be an account stated, yet he may in *covenant*, if the articles be under *seal* and any agreement in them be violated.

If the partners agree to contribute each a particular sum, an action will lie by one against the other to recover it, and the sum agreed to be advanced will be the measure of damages.

Where a partnership consists of more than two, and they have contributed severally in different proportions, and one withdraws in violation of their mutual agreement, each has his remedy for the breach.

It is an *indisputable proposition* that in every instance where an action if covenant is maintainable for the breach of a covenant in a deed of co-partnership, an action of *assumpsit* can be maintained if the partnership instead of being by deed were contracted verbally or in writing only.

The failure of the appellees in this case to comply with their contract to furnish the buildings and machinery gave the appellant a clear right to maintain his action of *assumpsit* at law against them, for any damages thereby occasioned him, and a jury is the proper tribunal to ascertain the extent of such damage.

APPEAL from the Equity Side of the Superior Court for Baltimore city.

The bill in this case was filed by the appellant on the 14th

of August 1851, stating that in 1849, he became possessed of the right to mine zinc ore on certain lands in Lehigh county, Pennsylvania, for the space of three years from the 1st of January 1850, which ore was of unexampled purity and richness, yielding over sixty per cent of clear metal, but could only be rendered profitable by being manufactured into metals and paints, and that for this purpose he, on the 1st of December 1849, entered into the contract in writing with the defendants, Manning, Stimpson & Co., the terms of which are sufficiently stated in the opinion of this court; the defendants thereby agreeing to devote their time and attention to the conduct of the business. The bill then charges that the plaintiff delivered in pursuance of this contract, 746 tons of ore, when defendants refused to receive any more, leaving a balance of $1600 due on what had been delivered. That defendants leased for six years a lot on the south side of the basin in the city of Baltimore, and put up buildings and machinery thereon, but at very heavy and unnecessary cost, because of their gross ignorance and negligence, and then refused to go on with the contract never having in fact worked up a single pound of ore, and have perverted the buildings from their proper object, to the making of sulphuric acid for their own exclusive profit and benefit. It further states that Manning and McTavish sold out their interest in said partnership to Stimpson, who has endeavored to supplant the plaintiff in the mining privilege : that plaintiff offered to take the work, furnish the capital, and carry out the contract, and give ample security for the performance of this offer. It then alleges that the defendant, Mrs Emily McTavish, through her trustee, Josias Pennington, claims an interest in the lot and buildings under a mortgage from Stimpson, to secure money loaned by her to him, and charges that she had knowledge of said contract before she took her mortgage, and, therefore, that it is subject to the plaintiff's rights under said contract. The bill then prays for the appointment of a receiver, to whom he offers to furnish money to work up the ores ; compensation for his alleged losses by reason of the non-compliance of defendants with the terms of their contract, and for an injunction restraining defendants from using

the buildings for the manufacture of sulphuric acid, and Mrs.
McTavish from enforcing her mortgage, and for general relief.
The injunction was granted as prayed.

The answers of Mrs. McTavish and Pennington, her trus-
tee, set up the mortgage for her benefit, and deny all know-
ledge of the contract between the complainant and Manning,
Stimpson & Co., at the time of its execution, and until a long
time thereafter.   The answer of Stimpson avers that the un-
dertaking was a new business, that plaintiff induced him to
enter into it by false representations, as to the cost of the
buildings and machinery, he (plaintiff) saying that they
would not cost more than $5000, but their actual cost was
more than $22,000 : that he paid the plaintiff $6016.81, on
account of said ore, and the latter has sued him at law for
the balance claimed.   He then states the dissolution of the
partnership, the loan by Mrs. McTavish to him, the mort-
gage to secure it, and her ignorance of the terms of his
agreement with the plaintiff.   He then denies that the ore
can be profitably worked, and avers that it cannot be worked
upon the terms agreed upon without loss and injury to all par-
ties concerned.   The answer of Manning admits the state-
ments of the bill and confirms its allegations.

A motion was then made to dissolve the injunction and tes-
timony taken to be used at the hearing thereof.   This testi-
mony consisted principally of the estimates of scientific men
as to the cost of manufacturing the ore, and the probable pro-
fits per ton.   These estimates differed greatly, some showing
a profit of $45 per ton, others $70, others $80, with a corres-
ponding difference as to the cost of manufacture.

The court below (FRICK, J.,) passed a decree dissolving
the injunction and dismissing the bill, from which the com-
plainant appealed.

The cause was argued before LE GRAND, C. J., ECCLE-
STON, MASON and TUCK, J.

*Grafton L. Dulany* for the appellant.

1st.   The appellant contends that he is entitled to a decree

for a partial specific performance of his contract with the defendants, and that the court below ought to have directed the appointment of a receiver to take possession of the works of the defendant and appellant, with the machinery and materials on hand, and work up the same, as had been agreed upon ; or that the appellant himself, should have been permitted so to do ; that the motion to dissolve the injunction should have been overruled by the court below, and the injunction continued : wherefore the court erred in dissolving said injunction, and dismissing the bill filed in the cause ; and, at any rate, that the same should have been modified, and not absolutely dissolved. 3 *Atk.*, 385. 2 *Story's Eq.*, 28, 31, 34. See also same vol., *secs.* 717, 718. *Story on Partnership*, 476.

2nd. That for the violation of the agreement on the part of the defendant, as proved by the evidence, there was no complete and adequate remedy at law, by an action for damages by the appellant, and that, therefore, equity will interfere in his behalf, and he ought not to be driven before a legal tribunal. 3 *Atk.*, 385. 2 *Story's Eq.*, *sec.* 718. 1 *Simons and Stewart*, 607. 2 *Ves.*, *Sr.*, 629. 5 *Munf.*, 442.

3rd. That the evidence that one of the defendants, Stimpson, was very heavily indebted, and so much in want of money, as to lead to a just apprehension of his solvency ; nor does it appear that Manning or McTavish are, either of them, worth any thing, which in equity is another reason and ground for its interposition on behalf of the appellant, as the pecuniary inability of the parties would render an action at law against them useless. 2 *Story's Eq.*, 31.

4th. That upon the facts disclosed by the record, it appears that the defendant, Stimpson, misapplied, with the concurrence and assent of his co-defendants, the partnership property, to his individual interest and purposes, excluding his co-partners, especially the appellant, from any participation in the management thereof, and, was guilty of gross misconduct towards the appellant. Wherefore the court below ought to have decreed a dissolution of the partnership, and appointed a receiver to wind up the concerns of the partnership ; or that

complainant should have gone on with the business himself, and an injunction granted to prevent his being interrupted by Stimpson. *Story on Partnership, sec.* 228, *and note.* 1 *Story's Eq., pp.* 622, 623, 333, 339, 340, *and note. Gow. on Partnership,* 110, 114. 19 *Ves.,* 148. 18 *Ves.,* 281. 1 *Bland,* 418.

5th. That the mortgage to Mrs. McTavish ought not to have prevented the granting of the injunction, because she took the property as bound by the previous contract of the partners with complainant, and the doctrine, " *caveat emptor,*" applied, and that, at any rate, the interest which she had, should not have prevented the injunction as to Stimpson. 7 *H. & J.,* 320, *Kemp's Ex'x vs. McPherson. Do.,* 458. 4 *H. & J.,* 269. 2 *Bland,* 542. 2 *H. & J.,* 176, 415. There was enough to put her upon inquiry. 3 *Gill,* 137. 1 *Md. Rep.,* 403, *Price vs. Bevans and McDonald.* 3 *Do.,* 334, *Baxter and Wife vs. Sewell.*

6th. The court erred in pronouncing a final decree dismissing the bill in this case, because it had not been set down for hearing except upon the motion to dissolve the injunction.

*Charles J. Pennington and T. P. Scott* for the appellees

1st. The main object of the bill is to obtain a specific performance of the alleged contract between the appellant and Manning, Stimpson & Co., and the prayer for an injunction and receiver is only incidental. A decree for a specific performance is not *ex debito justitiæ*, but rests entirely in the discretion of the court. 4 *Gill,* 472, *Geiger vs. Green.* 5 *Gill,* 223, *Gurly vs. Hiteshue.* 7 *Gill,* 124, *Tyson vs. Watts.* The contract was made upon the representations of the complainant, that the business would be profitable—all parties designed to carry it out, if possible, and Stimpson only refused when he found it would not be profitable. The court must look into the circumstances of the case *at the time* the specific execution is asked. 1 *H. & J.,* 124. Where a mistake is made in a contract of this kind, or where one party labors under a misapprehension, it will not be enforced. The contract must be fair, reasonable and just. 3 *Atk.,* 385. 67

*Law. Lib.*, 43, 146. The very terms of the contract show, that the parties did not understand the nature of it or what would be the result of the experiment. Neither party knew anything about the manufacture of the article. The witnesses differ in their estimate of the cost to at least $100,000 per annum; and there is the same difference as to the probable profits—they differ between $300,000 gain and $80,000 loss. Is this a case where the court in the exercise of a sound discretion will decree the specific performance of the contract?

2nd. Again, the improbability of a favorable result from the undertaking in consequence of the short time Stimpson has in the lot of ground, and the short time the appellant has in the mines, is sufficient to induce the court to refuse the decree for specific performance, and to leave the parties to their remedy at law. Stimpson had but a six years lease of the lot, and Wadsworth's lease of the mine is now out; how then are you to decree a specific execution?—to carry on a manufacturing enterprise of so large a nature?

3rd. The mortgage from Stimpson to Mrs. McTavish having been made in good faith, and without any knowledge on her part, she is not to be disturbed even if the appellant had a good claim as against Stimpson. The property mortgaged to her was not partnership effects, but she advanced the money with which the lot was purchased, and this gave her a prior lien. 67 *Law Lib.*, 90. Her mortgage was not only for a past debt, but for a present advance. Wadsworth's name is not mentioned in it—he had nothing to do with the lot—the mining interest was his, but the lot was Stimpson's. The mortgagee takes nothing in the mine, although it is embraced in the mortgage, simply because Stimpson had nothing to give therein. The two pieces of property are entirely distinct. The answer of Mrs. McTavish positively denies that she had notice, and this is responsive and is evidence. Again, her mortgage is protected by the act of 1826, ch. 192, sec. 8, from injunction, unless the appellant shall bring himself within the provisions of that act, which he has not done. By this act no person except a party to the deed or one who claims some right accruing after the recording of the mortgage, can ask for an in-

junction restraining the enforcement of it. The appellant occupies neither position.

4th. If the court is satisfied that a case is not made out for relief, the bill was properly dismissed though set down for hearing upon motion to dissolve the injunction. 4 *Gill*, 463, 471, 477, 478.

*Thos. S. Alexander* for the appellant, in reply.

The dismissal of the bill upon motion to dissolve is not warranted by the English practice; and the cases in this State (cited in 4 *Gill*,) only decide that where the plaintiff, upon his *own showing*, cannot have relief the bill will be dismissed, and to this extent only do they go. If the bill makes a case entitling the party to some sort of relief, it ought to be held over until final hearing.

The agreement gives Manning, Stimpson & Co. an interest in equity in the mines, and Wadsworth an interest in equity in the buildings erected for the manufacture of the ore. The defendants, in fraud of the agreement, have not worked up the ore furnished; and Stimpson has also, in fraud of the agreement, executed a mortgage of the property to Mrs. McTavish for money advanced on his own account. The bill asks for a specific performance of the contract so far as to work up the ore furnished, and that money may be supplied under the agreement; and it asks, *first,* that as defendants are insolvent, the work shall be carried on by a receiver, with the funds furnished by Wadsworth himself; and in the alternative, it asks for a dissolution of the partnership, the appointment of a receiver to work up the ore now on hand, and for an injunction prohibiting the use of the buildings— the partnership property—for any other purpose than that contemplated by the agreement; in other words, that partnership property shall not be used, except for partnership purposes. The answer of Stimpson admits the agreement set out in the bill, but insists that there was a subsidiary verbal agreement differing from and explanatory of the written one; but Manning, another partner, denies this and says the

written agreement is the true one. Mrs. Mc'Tavish, in her answer, admits that her advances were to pay the general partnership debts of the firm, and her mortgage is on the partnership property.

The partnership is determined by lapse of time, we cannot then, of course, ask for a specific execution of the whole agreement, but still, if we offer funds to carry on the manufacture and to work up the ore on hand, it can be done. The cases in 3 *Atk.*, 383 and 10 *Ves.*, 161, are almost identical with this, and show that courts of equity are in the habit of decreeing specific performance in such cases. There is no want of mutuality in the contract; the proof is that there is but one other such mine in the country, and the ore was of unexampled purity and richness; both parties had their eyes open as to the amount of the profits and the share that each was to receive. A specific performance would therefore be decreed if the partnership now existed.

But we have a right to the alternative relief asked in the bill. The buildings are all partnership property, erected by the firm with partnership funds, and actually expended under the direction of Wadsworth for the purposes of the partnership. Every thing acquired for the purpose of the partnership is partnership property, and to be treated as part thereof. *Story on Partnership*, 98. This property then is to be treated as partnership property, and is now to be converted into money for the purpose of distribution, and the only question is as to the proper distribution of it. This could be most properly and advantageously done by causing the ore to be manufactured and then sold. Courts of equity usually wind up partnerships by directing a sale, but this is not always done. If Wadsworth will undertake to indemnify the concern against loss, the court will provide that the receiver shall go on and work up the ore, and has the power to do so. The case is then made out as against *Manning, Stimpson & Co.*

Now as to Mrs. McTavish: It can be shown that she had actual notice. She says she had no notice of the contract, but she says she heard that this firm was engaged in the

manufacture of zinc into paints, and that she induced her son to withdraw from it. She therefore knew what was going on and to what purposes the buildings were applied. She knew the fact that Manning & Co. had some interest in the mines derived from Wadsworth, and she should have gone to him and have found out what this contract was. The case of *Price and Bevans vs. McDonald*, 1 *Md. Rep.*, 403, is conclusive upon this question of notice. Her mortgage is upon partnership property, and will not prevent the closing up of the partnership. On this point we do not ask that she shall be prohibited from selling the interest she had under the mortgage; we only ask that the partnership property shall not be diverted from its use. She came in with notice of our equities as against the firm, and is it possible that she cannot be enjoined? The defendants are liable for all the profits they have made by reason of the misapplication of the partnership property.

LE. GRAND, C. J., delivered the opinion of this court.

We discover no error in the decree of the Superior Court. The pleadings and proof show, plainly enough, that it is not such a case as to demand of a court of equity a decree for the specific performance of the contract relied upon, nor to justify its interposition, by way of injunction, against the rights of the mortgagee.

It seems that the appellant, having an interest in a zinc mine in Pennsylvania, was anxious to make some arrangement by which it could be manufactured into paints, &c., and, with this view, entered into a contract with the defendants, Stimpson, Manning and McTavish, by which it was agreed on his part, to furnish each year, for the period of three years, two thousand tons of the ore, on his being paid ten dollars per ton; the other parties stipulating to provide suitable buildings and machinery for its conversion into paints, &c., and to divide with him the profits of the enterprise, in the proportion of one-fourth to themselves and the remainder to him. It was also agreed, that the cost of the buildings and machinery, after

a specified time, was to be paid out of the profits. In pursuance of this agreement the complainant, from time to time, delivered in all seven hundred and forty-six tons of the ore, and received therefor $5860, leaving a balance of $1600 still due. The other parties refused to receive or pay for any more of the ore, and, also, to appropriate the buildings to the purpose of its manufacture as contemplated; alleging as a reason, that the manufacture of the ore, as originally designed, could only be followed by the ruin of all the parties concerned.

It seems that Manning and Alexander S. McTavish, dissatisfied with the prospect of profits to be realised from the business, disposed of their interest to Stimpson, who, to secure Mrs. McTavish for loans made to him, mortgaged the buildings and machinery.

The bill prays for the appointment of a receiver to take possession of the premises, and work up the ore; or, that the plaintiff be permitted to do so; for compensation for alleged losses, and that Mrs. McTavish may be restrained from enforcing her mortgage.

We regard the agreement, of date the 1st day of December 1849, as establishing a partnership between the complainant and those who at that time constituted the firm of Stimpson, Manning & Co., and did this appear to us to be a proper case, we would decree a performance of it.

The testimony shows that the business was one uncertain and speculative in its character. Scientific and practical persons differ most widely in their estimates in regard to the cost of conducting it; so much so, indeed, as to render it impossible for this court to see, with any degree of certainty, what would have been the probable result of the operation had the works been carried on in conformity with the stipulations of the agreement. By its terms the complainant was bound to furnish, each year, for the period of three years, two thousand tons of ore, and, according to the testimony of the witnesses, the cost of its manufacture was wholly uncertain. Some of them compute it at forty dollars per ton more than others, making a difference in the operations of three years of upwards

of *two hundred thousand dollars,* or of *four hundred thousand dollars* in six years, if the business should be so long continued. Such disagreement in the opinions of those supposed, from their scientific knowledge and actual experience, to be well acquainted with the business, was well calculated to induce the most adventurous to pause.

As was properly remarked by counsel, a decree for specific performance is not *ex debito justitiæ,* but rests in the sound discretion of the court, to be given or refused as the particular circumstances of each case may demand. In the particular one now under consideration, it is manifest to us, the purposes of justice would not be subserved by granting the prayer of the bill. The time specified for which the complainant was bound to furnish the ore has expired, and it is abundantly shown that the buildings and machinery are not adapted to its manufacture. In such a case a court of equity ought not to decree a specific performance, if the party complaining has a full and adequate remedy at law; and, we hold it clear, if the complainant can make out the allegations of his bill, his redress is ample and complete at law.

Although it is true that one partner cannot sue another at law in an action of account, unless there be an account stated, yet it is equally so, that he may in *covenant,* if the articles be under *seal,* and any covenant or agreement in them be violated. If the partners agree to contribute each a particular sum, an action will lie by one partner against the other to recover it, and the sum agreed to be advanced will be the measure of the damages. *Terrill vs. Richards,* 1 *Nott and McCord's Rep.,* 20. So where the partnership consists of more than two persons, and they have contributed severally, and in different proportions, and one of them withdraws from the co-partnership, in violation of their mutual agreement, each has his remedy for the breach. *Dunham vs. Gillis,* 8 *Mass.,* 462. And it has been held, where a sole trader covenants in consideration of a certain sum being paid to him in instalments, and after one instalment is paid he becomes a bankrupt, that his assignees may maintain an action for the

remaining instalments. These, and the like, are cases where the articles are under seal. But, to use the language of Mr. Gow, in his *Treatise on Partnership, page* 72, "it may be advanced as an *indisputable proposition*, that, in whatever instances an action of covenant is maintainable for the breach of a covenant comprised in a deed of co-partnership, in the same instances an action of *assumpsit* can be sustained, if the partnership, instead of being constituted by deed, were contracted verbally or by writing only."

Now we consider the case as made by the bill as one of total failure on the part of Stimpson, Manning and McTavish, to fulfil their agreement. In principle—for they did grind an half ton of the ore—like the case of *Gale vs. Leckie,* 2 *Starkie,* 107. In that case one person agreed with another to furnish him with a manuscript to be printed by the latter, the profits to be equally divided between them. It appeared that a portion of the manuscript had been furnished, and that the work of printing had gone to the extent of upwards of three hundred pages, when the defendant refused to furnish any more matter for the printer. It was held that an action of special assumpsit would lie in such a case, and that it ought not to be considered as an action for partnership profits, but for refusing to contribute the labor of the defendant towards the attainment of profits. So in the case now before us: the complainant alleges a refusal, on the part of those with whom he has contracted, either to contribute their labor and attention, or appropriate the proper buildings to the manufacture of the ore. If this allegation be maintainable, then he has a clear right to sustain his action of assumpsit for the non-performance of the engagement on their part.

These views dispose of the objection to Mrs. McTavish's mortgage. We do not regard the complainant as having any lien on the buildings on the south side of the basin. They were not erected out of funds of the partnership. The fact is, the defendants who constituted the firm of Stimpson, Manning & Co., refused to comply with their contract, in other words, they failed to furnish the necessary buildings and ma-

chinery, and they are, therefore, responsible to the complainant for any damage which their non-compliance with their contract may have occasioned him. A jury is the proper tribunal to ascertain their extent.

For these reasons we affirm the decree of the court below.

*Decree affirmed with costs.*