# LEWIS A. GUSDORFF *vs.* SOLOMON SCHLEIS-NER.

*Partnership—Injunction to Restrain Withdrawal of Money From a Bank—Specific Performance of Partnership Agreement—Equity Pleading—What is Admitted by a Demurrer.*

Upon a bill for the specific performance of articles of copartnership and for the appointment of a receiver, an injunction will not be granted to restrain the defendant from withdrawing his individual funds from a bank upon the ground that he had agreed to contribute a certain sum to the capital of the partnership and had failed to do so, when it appears that the plaintiff has himself failed to perform the articles of partnership, and it is not shown that the defendant is insolvent.

The general rule is that specific performance of a copartnership agreement will not be decreed.

When a case is heard upon demurrer to the bill of complaint, an allegation of the bill which is contradicted by the exhibit filed therewith and upon which its equity rests, is not to be taken as admitted by the demurrer.

Appeal from an order of Circuit Court No. 2, of Baltimore City (PHELPS, J.), sustaining a demurrer to the bill of complaint and dissolving an injunction previously issued. The allegations of the bill were substantially that Messrs. Gusdorff and Schleisner, appellant and appellee, respectively, entered into a contract of partnership to conduct the clothing business for three years from July 1st, 1896; that Schleisner agreed to give his personal attention to the business, Gusdorff being unable to do so, on account of being engaged in another business at the same time; that each party agreed to contribute the sum of ten thousand dollars to the firm's capital on or before August 4th, 1896; that upon the formation of said partnership, Schleisner proceeded to purchase goods in the name of the firm, some of which were already delivered at the time of the institution of this

suit, and partially paid for, leaving a balance of one thou-
sand dollars still due and unpaid ; that he further made con-
tracts for the purchase and delivery of goods to the amount
of fifteen thousand dollars more, thus creating an indebted-
ness for merchandise alone of over sixteen thousand dollars ;
that the firm also leased an expensive building at the south-
west corner of Light and Baltimore streets for three years,
at a rental of eight thousand five hundred dollars a year,
thus creating an additional future liability of over twenty-
five thousand dollars, and that the firm further expended
the sum of four thousand dollars upon repairs, improve-
ments and fixtures for use upon said premises, thus creating
a total liability of some forty-five thousand dollars all told ;
that the only capital actually contributed by the respective
partners was the sum of two thousand dollars each, which
was only just enough to pay for the repairs upon the store
building and the fixtures. That in this state of the case,
Gusdorff, the appellant, was at all times ready and willing
to put up into the firm's capital the remaining eight thou-
sand dollars, due by him, and repeatedly so stated to said
Schleisner and offered to put up his money, and demanded
that Schleisner should put up his ; and that Schleisner failed
and refused to put up his remaining eight thousand dollars
in spite of such repeated requests on Gusdorff's part ; that
finally Schleisner became ill to such an extent as to make
it impossible for him to engage in business, and so informed
Gusdorff, and stated to him that he was advised by his
physician that he could not continue in business, and there-
fore that he positively declined to proceed further with the
business or to contribute his proportion of the capital, as he
agreed to do, urging his desperate health as the cause of
his so declining. That Schleisner was about to draw out
of the banks in which he had deposited the same, the only
assets he had, namely, the money which he, Schleisner, had
agreed to put up into the firm capital, and which he had
declined to so put up, and that he was about to devote the
same to his own use. That these moneys comprised the

identical additional funds which Schleisner had contracted with Gusdorff to put into the firm's capital of Sol. Schleisner & Co., and that if drawn out of bank by him, and disposed of, he, Schleisner, would have no assets out of which the firm's creditors could realize anything, but the entire indebtedness would be left upon the shoulders of Gusdorff.

The prayer of the bill was : (1). That the partnership heretofore existing between the parties may be dissolved. (2). That said Schleisner may be adjudged and decreed to pay up and contribute to the copartnership capital of said Sol. Schleisner & Co. the sum of $8,000 for the payment of his proportion of its indebtedness as he had contracted to do, but failed to do ; said sum to be paid into the hands of a receiver. (3). That a receiver may be appointed to wind up the affairs of said firm of Sol. Schleisner & Co.; to take and receive into his possession all its assets of every kind and description ; to adjust and ascertain said firm's indebtedness, and pay the same to the creditors thereof ; to convert the assets of said firm into money, as far as may be necessary, and generally to settle and close up the business of said firm. (4). That a writ of injunction may issue enjoining and restraining said Solomon Schleisner from checking upon and drawing out of certain named banks any of the funds standing to his credit therein, and also enjoining the banks from paying out such funds without an order of Court.

A receiver was appointed and an injunction granted as prayed on the day the bill was filed. The defendant's answer denied many of the allegations of the bill, asserted the entire solvency of both plaintiff and defendant, and of the firm, and charged that the Court was without jurisdiction to issue the injunction.

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Page, Roberts and Boyd, JJ.

*Charles W. Field*, for the appellant.

The only contest raised by the demurrer to this bill and decided by the Court below, was as to the power of the

Court to issue an injunction restraining Schleisner from
drawing his eight thousand dollars, or thereabouts, out of
bank and converting it to his own use until the further order
of the Court; and that is the sole question for this Court
to decide. It is a very narrow one, and we think a very
simple one. The relief asked by the bill, in addition to the
dissolution of the partnership, the appointment of receivers
and the granting of the injunction aforesaid, was that
Schleisner might be decreed to pay up and contribute to
the partnership capital of Sol. Schleisner & Co. the sum of
eight thousand dollars for the payment of his proportion of
the firm's indebtedness, as he had contracted, but failed to
do, said sum to be paid into the hands of the receivers. If
this relief, namely, the payment by Schleisner to the firm
capital of that sum was such relief as it was the duty of
the Court to grant upon the state of facts set forth in the
bill, when duly proven, then this injunction was properly
granted, and the demurrer to the bill should have been
overruled. For the principle of law regulating the grant-
ing of injunctions in such cases is briefly this : That wher-
ever a Court of Chancery can decree the performance of a
contract it will enjoin *pendente lite* any disposition of or
meddling with the subject-matter, pending the application
for such performance. That is to say, where equity can
decree that a defendant should do a certain thing, it will
*pendente lite* enjoin him from incapacitating himself from
doing such things when the Court shall so decree. For
this proposition of law, which is eminently supported by
common sense, we refer to the following cases : *Geiger* v.
*Green,* 4 Gill, 472, and note ; *Equitable Gas Co.* v. *Balto.
Coal Tar Co.,* 63 Md. 298 ; *Gottschalk* v. *Stein,* 69 Md. 54 ;
*Gelston* v. *Sigmund,* 27 Md. 343.

So the question comes down to whether or not the Court
below upon the facts stated in the bill should decree that
Schleisner pay into the firm capital the eight thousand dol-
lars which he contracted to pay. And upon what theory
of law or honesty should he not be decreed so to do ? He

contracted to pay up the money ; on the faith of such con-
tract he was authorized by Gusdorff to incur a liability of
over forty-five thousand dollars, for which Gusdorff is re-
sponsible, and he has failed to keep his contract and put up
his money, though Gusdorff has always been ready and
willing and so tendered himself to put up his. If he made
the contract why should not chancery decree that he per-
form it? There can be but one objection urged, namely,
that equity would not as a rule decree the specific perform-
ance of a contract where the party has an adequate remedy
at law. But this principle does not apply to copartnership
contracts, where in order to ascertain what damages one
partner has sustained by a breach of contract by the other,
*it becomes necessary to take an account of the business and
affairs of the copartnership.* In such cases equity would
enforce specific performance of the contract, because a jury
in a Court of common law is incompetent to adjust the
accounts of the partnership and thereby ascertain the dam-
ages. See *Parson on Partnership*, 4th edition, section 204–
205. And this is just the case here. The contract be-
tween Schleisner and Gusdorff was not that Schleisner
should pay *Gusdorff* ten thousand dollars, but that Schleis-
ner should pay *the firm composed of Gusdorff and Schleisner*
ten thousand dollars on or before Aug. 4th, 1896. Had
the contract been that Schleisner should pay Gusdorff
*individually* ten thousand dollars, a jury could easily ascer-
tain the damages Gusdorff sustained by such breach, be-
cause they would be obviously exactly ten thousand dol-
lars, or in this case, two thousand dollars having been put
up, eight thousand dollars ; but that was not the contract.
Schleisner contracted to pay Gusdorff nothing, but he con-
tracted to pay to the firm of Sol. Schleisner & Co. ten
thousand dollars, and only paid up two thousand dollars on
it. Now the damages which Gusdorff sustained by Schleis-
ner's failure to keep this contract might be the whole eight
thousand dollars, which he failed to contribute, or it might
be nothing ; depending upon the condition of the business

of the firm.    If the firm assets in the hands of the receivers
without the payment of Schleisner's eight thousand dollars
were sufficient to liquidate its entire indebtedness and ex-
penses, then Gusdorff sustained no injury at all.    If on the
other hand, those assets without Schleisner's payment would
be insufficient to pay all the firm's indebtedness, then Gus-
dorff's loss would be one-half the amount of such insuffi-
ciency, because he, Gusdorff, would be responsible for the
other half of such shortage himself, any how.    Therefore
the only way to ascertain Gusdorff's damage from Schleis-
ner's breach of contract would be to go over and make an
account of the entire business of the firm, and then ascer-
tain how far the firm's assets, as at present considered,
would be short of its liabilities.    This, obviously, no jury
would be competent to do, but would involve a matter of
partnership accounts, which have always been under the
jurisdiction, and the exclusive jurisdiction, of Courts of
Chancery.    Furthermore, the cases of *Birchett* v. *Bolling*,
5 Munford, 442 ; *Satterthuraite* v. *Marshall*, 4 Delaware
Chancery, 352 to 355 ; *Somerby* v. *Burtin*, 118 Mass. 287 ;
*Whitworth* v. *Harris*, 40 Miss. 483 ; *Tilman* v. *Cannon*, 3
Humphries (Tenn.) 63, all lay down the doctrine that
equity will specifically enforce a contract for the convey-
ance of *property rights* by one partner to another or to the
firm where such contract has been acted on or fulfilled by
the other partner to his cost or detriment.    And the rule
that equity will not in general decree specific execution of
copartnership agreements, merely means that it will not at-
tempt to force men to act as partners and conduct a part-
nership business when it would be obviously impossible for
any court to enforce practically such a decree ; as impossi-
ble as it would be to force a person to sing.    But so far as
the conveyance of property rights are concerned, the rule
does not apply.    And to the same general effect, see also
*Crawshay* v. *Maule*, 1 Swanton's Reports, note at bottom
of page 513 ; *Buxton* v. *Liston*, 3 Atkyns, 383 ; 3 *Waite's
Actions and Defences*, 186.

The whole question of what is or is not an adequate remedy at law has been revolutionized by a statute in our State ; we refer to the Code of Public General Laws, Article 16, section 199, which provides that : " No Court shall refuse to specifically enforce a contract on the mere ground that the party seeking its enforcement has an adequte remedy in damages, unless the party resisting its specific enforcement shall show to the Court's satisfaction that he has property from which such damages may be made, or shall give bond, with approved security, in a penalty to be fixed by the Court, to perform the contract or pay all such costs and damages as may, in any Court of competent jurisdiction, be adjudged against him for breach or non-performance of such contract."

Therefore, since 1888, even though a plaintiff has, technically speaking, an adequate remedy for damages at law, he still has the right to go into chancery and ask for the specific performance of his contract, unless the defendant shall not only show that the plaintiff has an adequate legal remedy, but shall also show that he, the defendant, is financially responsible, so that if a judgment be gotten against him the money can be made. For the purposes of this case we can look only at the record, and there is no allegation or statement in the record which shows that Schleisner is financially responsible if Gusdorff did sue him at law. On the contrary, the record affirmatively shows you the reverse, namely, that Schleisner's only assets were this money in various banks, and that he was about to draw that out and convert it to his own use, if he had done which, obviously he would be practically insolvent and totally irresponsible long before a judgment at law could possibly be gotten against him. This statute revolutionizes, in Maryland, the law governing decree for specific performance, and does not allow the defence of an adequate remedy at law to be opposed to a bill for specific performance ; unless there is also proof that the defendant is and will be financially responsible to meet a judgment ; and the record

in this case states and proves exactly the reverse.   Therefore, we say that a decree for the performance by Schleisner of his contract to put into the firm's capital that eight thousand dollars was eminently justified by the law in such cases, and if so, the injunction granted by the Court below should not have been dissolved pending the suit.

The learned Judge of the Court below did not pass upon the merits of this case at all but sustained the demurrer to the bill and dissolved the injunction for the reason that, as stated in the sixth clause of the bill, the appellant was engaged in other business as a member of the firm of Gusdorff Bros., whilst by the eighth clause of the partnership agreement he agreed that he would not engage in any other mercantile pursuit during the partnership of Sol. Schleisner and Company, and therefore he did not come into the Court with clean hands.   We are unable to see what this has to do with the merits of the case.   Whilst it is true that the contract of partnership forbade Gusdoff to engage in any other business, it is also true that he was at the time the contract was signed, and since that time, engaged in another business at a different place " as known by said Schleisner," and therefore unable to give the business of Sol. Schleisner & Co. his attention.   This being alleged in the bill is conclusively admitted to be true by the demurrer, and whatever the contract may have provided, if *Gusdorff acted otherwise with Schleisner's knowledge*, he, Schleisner, waived that provision of the contract and practically abrogated it.   That any clause in a contract can be waived and annulled by the assent of the parties, expressed, or implied from a course of dealing, is too plain for argument.   But we cite upon that point *Parsons on Partnership*, sec. 164.

*Isidor Rayner* and *M. Sonnehill*, for the appellee.

The defendant claims that the bill is fatally defective in a number of particulars, and that the extraordinary relief of injunction and receivership should not have been granted upon the filing of the same, and sets forth the following

grounds upon which the order of the Court sustaining the demurrer should be affirmed :

1st. That specific performance of articles of copartnership will not be decreed by a Court of Equity. It is submitted that a Court of Equity has neither the jurisdiction nor the machinery to specifically enforce performance of a contract of this character. This proposition seems to be settled by the authorities, and no case in Maryland can be cited in which the Court has ever undertaken to decree specific performance upon a bill of this character. 2 *Daniel's Chancery Pleading and Practice*, page 1663, vol. 2, 6th American edition and note to said section ; *Fry on Specific Performance*, sec. 1540, p. 677 ; *Lindley on Partnerships*, vol. 2, p. 475 ; *Pomeroy's Equity Jurisprudence*, vol. 3, sec. 1405 ; *Pomeroy on Specific Performance*, sec. 290.

2d. The Court had no jurisdiction to negatively enjoin what it could not affirmatively decree. If the Court had no jurisdiction to specifically enforce performance of the partnership agreement, then the Court could not indirectly by an injunction restrain the defendant from withdrawing his money from bank. There is no negative stipulation in this contract at all. There is no obligation upon the part of the defendant not to withdraw the money that he had deposited in bank, and the Court has no power to restrain him from doing so. We submit that this principle is settled by the authorities in Maryland. " An injunction will not be granted when ancillary to the relief of specific performance which cannot or should not be enforced." *Allen* v. *Burke*, 2 Md. Ch. 534 ; *Gelston* v. *Seigmund*, 27 Md. 334 ; *Note to Salmon* v. *Claggett*, 3 Bland, 125 ; *Geiger* v. *Green*, 4 Gill, 472.

3rd. The funds in bank are the individual funds of the defendant, not charged with any trust or lien and having no connection with the partnership business. No authority can be produced which holds that a Court of Equity in a bill of this character can enjoin a partner from drawing on bank for his private funds that are there deposited. The

contention of the complainant is, that if A enters into co-partnership with B, that a Court of Equity cannot only enforce specific performance of the partnership articles against A at the suit of B, but can enjoin A in the diposition of his lands, property or money, constituting his private and individual assets.   It is submitted that there is no principle upon which a Court of Equity can maintain any such jurisdiction.

4th. The object of the bill is to compel the defendant to bring into Court the sum of eight thousand dollars, it being alleged that he had agreed to contribute to the partnership the sum of ten thousand dollars and had only paid in the sum of two thousand dollars thereof.  There is no reason given why he should bring this sum into Court.  There is no pretense in this case that the partnership is insolvent or that any part of said sum is necessary for the payment of the partnership debts.  The complainant therefore fails to make the full and candid disclosure of the facts that would entitle him to an injunction.  If the partnership is to be dissolved and its debts paid, then it should have been alleged that the sum of eight thousand dollars was required to pay the debts, or that the assets of the firm were not sufficient for that purpose, but the bill fails to state any reason that would justify the Court in arbitrarily decreeing that the defendant must bring in this specific sum of money when no exigency demands it and no disposition is to be made of it by the Court after it is brought in.  It is a harsh exercise of jurisdiction that enjoins the defendant upon a bill framed like this, from making use of private funds that have no connection at all with the partnership business, and we do not believe any precedent can be cited that sanctions a practice of this sort.  To warrant the Court to interfere by way of injunction, a full and candid disclosure of all the facts must be made. *Lamm* v. *Burrell*, 69 Md. 274 ; *Johnston* v. *Glenn et al.*, 40 Md. 200.

5th. This bill is evidently defective in another particular. It proposes a decree against the defendant for his portion of

the capital, and in the meantime, proposes to lock up his private funds without any payment having been made by the complainant of the capital agreed to be contributed by him. The least that could have been expected of the complainant when, without notice to the defendant, he obtained the summary process of injunction, was to require him to pay into Court the amount still due by him. His statement of his willingness to do so is not sufficient. He should have tendered it with his bill. There must be mutuality when the Court is invoked for specific performance in a proceeding like this. As this case now stands, the Court could decree that the defendant pay the sum of eight thousand dollars and rest there—the complainant neither having paid the sum of eight thousand dollars which is still due by him, nor having his property tied up until it is paid, as he claims the defendant should be made to do.

6th. These grounds were all urged by the defendant in the Court below as a reason why the injunction should be dissolved. The Court held, however, that it was unnecessary to pass upon them, because it considered that the ground which is now given was sufficient to debar the complainant from obtaining the writ of injunction in this case. This ground is, that the complainant has confessed in this proceeding, as will appear by a comparison of the bill with the copartnership articles, filed as an exhibit therewith, that he has broken and violated the copartnership agreement, and having failed to perform his part of the contract, cannot ask for specific performance against the defendant. This point seems so clear that we submit the statement of it will be sufficient to warrant an affirmance of the Court's order. The bill of complaint, paragraph six, contains the following statement : " That the defendant has for several weeks past been in an exceedingly weak physical condition and a very ill man, to such an extent as to incapacitate him from actively engaging in said business and supervising and running the same, although his contract with your orator required him *to be the active managing partner and buyer during the*

*continuance of said partnership,* your orator being engaged in *other business,* as a member of the firm of Gusdorff Brothers, and therefore unable, as known by Schleisner, to give this business *his personal attention and supervision."*

The copartnership agreement contains the following provision : (Section 8). *" Nor shall said partners by himself or with any other person* whomsoever, during the continuance of said partnership, *directly or indirectly* engage in any other mercantile pursuit; but his time *and attention shall be devoted to the partnership which is by these articles formed."* In other words, the complainant, without any explanation, files his bill in which he admits that he has failed to perform his part of the contract in one of its most important particulars, and at the same time prays the Court to decree specific performance of the contract as against the defendant. It will be observed that the principal charge made against the defendant is his alleged failure and incapacity to give the business his personal attention, while at the same time the complainant admits that he has incapacitated himself from carrying out the partnership agreement, and has violated this very provision which he seeks to enforce against the defendant. Surely under these circumstances, specific performance cannot be decreed, beeause the very first requirement upon which the doctrine of specific performance rests, is that the complainant must show that he has fully performed everything required of him by the contract. *O'Brien* v. *Pentz,* 48 Md. 562, 577 ; *Carswell* v. *Walsh,* 70 Md. 507.

Roberts, J., delivered the opinion of the Court.

The facts out of which this controversy arises, are substantially, that on the 6th of February, 1896, Lewis A. Gusdorff, the appellant, and Solomon Schleisner, the appellee, agreed in writing under seal, to become partners in the general merchandising business for the term of three years, commencing on the first of July, 1896, and ending on the 30th day of June, 1899; that by the terms of said agreement the respective sums which each partner was to con-.

tribute to the partnership capital, was expressly stipulated as well as the times when said sums were to be paid ; that by the fourth paragraph of said contract of partnership it was agreed, "that the capital of said partnership shall consist of the sum of thirty thousand ($30,000) dollars, which shall be brought in by the said partners in the following proportions, namely : The sum of ten thousand ($10,000) dollars by the said Solomon Schleisner, and ten thousand ($10,000) dollars by the said Lewis A. Gusdorff, and the said sums so advanced by the said partners shall be paid into the Third National Bank of Baltimore, to the credit of said partnership, on or before the fourth day of August, eighteen hundred and ninety-six, and the said Lewis A. Gusdorff shall contribute an additional ten thousand ($10,000) dollars to said partnership on or before the thirty-first day of December, eighteen hundred and ninety-six, by depositing the same in the bank aforesaid to the credit of said partnership ;" and further by the eighth paragraph of said agreement it was agreed, "that said partners shall not, without the consent in writing of the other, employ any of the moneys, goods or effects belonging to the said partnership, or engage the credit thereof in any matter or thing except on the account of or for the use and benefit of the said partnership ; nor shall said partners, by himself, or with any other person or persons whomsoever, during the continuance of the said partnership, directly or indirectly engage in any other mercantile pursuit, *but his time and attention shall be devoted to the partnership which are by these articles formed.*" The bill prays for relief as follows :

1st. For a dissolution of the copartnership existing between the appellant and the appellee.

2nd. For a specific performance in part of the articles of copartnership, to the effect that the appellee be required to contribute to the copartnership capital the sum of $8,000 in accordance with the terms of said agreement.

3rd. For the appointment of a receiver to take charge of the partnership assets.

4th. For the writ of injunction to restrain the appellee from withdrawing from certain banks named in the bill his personal funds standing to his credit therein and from disposing of any of the partnership assets in any manner whatever.

Upon filing the bill, an injunction was issued and a receiver appointed. The appellee answered the bill denying all its material allegations, and demurred to the jurisdiction of the Court below to grant specific performance of the contract of copartnership and to restrain the appellee from withdrawing his individual deposits from the banks named in the bill. The Court sustained the demurrer and dissolved the injunction, and from the action of the Court below this appeal is taken. The appellant in his printed brief says, " The only contest raised by the demurrer to this bill and decided by the Court below, is as to the power of the Court to issue an injunction, restraining Schleisner from drawing his $8,000, or thereabouts, out of bank and converting it to his own use, until the further order of the Court; *and that is the sole question for this Court to decide.*"

In passing upon this contention it will be necessary for us to examine briefly some of the other questions named in the bill, as throwing light upon the proposition conceded to be the leading and only inquiry on this appeal. There is exhibited with the bill a duplicate of the articles of copartnership, certain paragraphs of which we have set out in this opinion, that the same may assist in the presentation of the object and purpose sought to be accomplished by the bill. The truth of the facts set out in the bill, where they are properly pleaded, will not be questioned, but where the bill alleges a fact expressly negatived by the contract of partnership filed with the bill, such representation of fact cannot be said to be properly pleaded, nor is it entitled to be accepted as true. On the contrary, the bill and exhibit being read and construed together, show very clearly that " said partners shall not, by himself, or with any other person or persons whomsoever, during the continuance of the

said partnership, directly or indirectly engage in any other mercantile pursuit, but his time and attention shall be devoted to the partnership which is by these articles formed." So that the meaning sought to be placed upon the clause of the articles of copartnership just quoted, is not even for the purposes of pleading to be considered as admitted, for the manifest reason that the concession of the allegation contained in the bill would be an express denial of the clause just referred to.    Such a construction cannot be permitted, as the copartnership agreement is the sole foundation upon which the bill rests and from which the proceeding takes its source.    According to the statement of facts contained in the bill no benefit can now reasonably be expected to result to either party by the specific performance of the contract of copartnership, as it is conceded that the appellee is so far physically disabled from disease as to be incapable of engaging in any business, or the supervision of the same ; and it is further admitted by the appellant, that in consequence of his being engaged in other business, as a member of the firm of Gusdorff Bros., he is unable to give his personal attention and supervision to the business of the firm of Sol. Schleisner & Co.    So that we are here confronted with a state of case in which neither partner is able to manage the affairs of the firm, notwithstanding the articles of copartnership stipulate that " during the continuance of the partnership, neither party shall, directly or indirectly, engage in any other mercantile pursuit, but his time and attention shall be devoted to the partnership which is by these articles formed."    It is a universal rule of equity that he who asks for a specific performance must himself be in a condition to perform.    *Morgan* v. *Morgan*, 2 Wheat. 290.    Mr. Pomeroy says it is well settled, as a general rule, that an agreement to enter into a partnership, which would be literally performed by executing the partnership articles, or to carry on a partnership already established, will not be specifically enforced.    *Pomeroy on Contracts* (Specific Perform.), sec. 290 ; 2 *Lindley on Partn.*, 5 ed. 476 ; *Fry*

*on Specif. Perform.*, 3 Am. ed. 681; *Scott* v. *Rayment*, L.
R. 7, Eq. 112; *Buck* v. *Smith*, 29 Mich. 166; *Meason* v.
*Kaine*, 63 Pa. St. 335; *Sichel* v. *Mosenthal*, 30 Beav. 371.

The first item of relief prayed for is that the existing
partnership between the parties to this proceeding be dis-
solved, and this is asked by the appellant upon the admitted
fact that the appellee's physical condition is such that it is
impossible for him to engage in any business, and as con-
ceded by the bill the appellee upon ascertaining the condi-
tion of his health informed the appellant "that the only
course to pursue would be to wind up the business at once,
&c., suggesting an assignment for the benefit of creditors
as the best thing to do."

The various sums of money which the appellee had de-
posited in the banks heretofore mentioned were still in
those banks at the time the bill was filed, and would neces-
sarily have passed to the hands of any trustee named by
said partners for the benefit of the firm's creditors, but this
proposition was declined by the appellant, who preferred
the appointment of a receiver and the granting of an in-
junction, and as a result this bill was filed. The bill con-
tains no allegation of the insolvency of the appellee, and it
is a reasonable inference that if he had been insolvent the
appellant would not have entered into a copartnership with
him for the term of three years commencing on the first
day of July, 1896, and which employed a capital of $30,000.
The bill was filed on the 19th of August, 1896, fifty days
after the partnership was to become an active business con-
cern. Each partner, prior to the fourth of August, 1896,
contributed to the capital of said partnership the sum of
$2,000, and neither partner has made any further contribu-
tion to the capital, although the appellant claims to have
been always ready and willing to contribute such sum or
sums as he had contracted to pay, but it is charged that the
appellee has failed to contribute the amount which he has,
by the terms of said contract agreed to pay, although re-
peatedly requested so to do; and it is further charged that

the appellee has incurred, or sought to incur on the credit of said firm, liabilities to a large amount, and that the appellant has always been able and willing to comply with his part of said articles of copartnership.    The facts thus enumerated sufficiently explain the character of the controversy. Speaking of a proceeding of this nature, MR. JUSTICE MARTIN, delivering the opinion of this Court in *Geiger* v. *Green*, 4 Gill, 475, said, " It is an acknowledged principle in the exercise of that branch of equity jurisprudence, which respects the specific performance of contracts, that it is not a matter of right in the parties, but the application is addressed to the sound and reasonable discretion of the Court; it is granted or withheld according to the circumstances of the case, and a Court of Equity must be satisfied that the contract sought to be enforced is fair and just, and reasonable, and equal in all its parts, and founded on an adequate consideration, before the Court will interpose with this extraordinary assistance." Measured by the requirements of this rule, should this application recommend itself to the favorable consideration of a Court of Equity ? We think not.    The bill fails to satisfactorily show that the appellant is without a full and adequate remedy at law, or that the appellee is unable to respond in damages for such loss as the appellant may have sustained by the conduct of the appellee in failing to keep and observe the articles of copartnership.    Nor is the appellant entitled to relief in this proceeding, because of the failure of the appellee to give to the partnership affairs his personal attention and supervision, since, in this particular respect, the appellant is equally at fault in the observance of the terms of his contract.    It may be contended that one partner cannot sue the other at law in an action of account, unless there be an account stated, yet it is equally so, that he *may in covenant*, if the articles be under seal, and any covenant or agreement in them be violated.    *Wadsworth* v. *Manning et al.,* 4 Md. 70.

In conclusion and as decisive of the *question* which the

appellant charges is "the sole question for this Court to decide," we think the Court below correctly determined that it had not jurisdiction to restrain the appellee from dealing with his individual deposits as his own property. In *Spiller* v. *Spiller*, 3 Swans. 557, the bill prayed specific performance of an agreement to sell certain copyhold premises.   LORD ELDON, delivering the opinion of the Court, said, "I wish it to be understood as my opinion, that, in general, on a bill for the specific performance of an agreement to sell, the plaintiff is not entitled to restrain the owner from dealing with his property; a different doctrine would operate to control the rights of ownership, although the agreement was such as could not be performed."   We think the rule thus announced equally applicable to the case at bar.   There is nothing in this case to justify the granting of the writ of injunction, and we have, after the most careful examination, failed to discover a single authority sustaining any such view.

   As a consequence of the reasons heretofore assigned the order of the Court below sustaining the demurrer to the bill of complaint and dissolving the injunction is hereby affirmed with costs.

*Order affirmed with costs.*

(Decided March 31st, 1897.)